**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JANE DOE, JANET DOE, and JILL DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HCA HEALTHCARE, INC., and URGENT CARE ENTERPRISE, LLC, d/b/a CARENOW,<br><br>Defendants. | **CASE NO. 3:26-CV-00993**<br><br>**DISTRICT JUDGE CRENSHAW**<br><br>**MAGISTRATE JUDGE HILL** |

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' MOTION TO REMAND**

The Complaint alleges that Defendants' purported misuse of various "tracking technologies" in their online interactions with Plaintiffs violated federal patient privacy laws, including HIPAA, HIPAA's Privacy and Security Rules, 45 C.F.R. Parts 160 and 164, and 42 U.S.C. § 1320d-6. (Compl. at ¶¶ 7–8, 221–43, 285–95, 389–99.) It is yet another in a long line of substantively identical cases filed by Plaintiffs' attorneys. Indeed, those attorneys have a largely identical case against another healthcare company currently pending in this Court that, likewise, is predicated on allegations of similar misconduct and violations of these same statutes, rules, and regulations. *See Doe v. Unlock Health*, Case No. 3:26-cv-00289 (M.D. Tenn.), ECF No. 1, Compl.

at ¶ 495. As even a cursory comparison makes clear, the two complaints are sisters that closely resemble each other in the most fundamental respects.[1]

Plaintiffs have now moved to remand this case to the state court, arguing that there is ***no basis*** for federal jurisdiction. Plaintiffs' position is contrary to the facts and law. Plaintiffs' claims do, in fact, arise under and depend upon the application of federal law. Plaintiffs explicitly ask the Court to judge Defendants' conduct against national standards imposed by federal statutes and regulations. Because Plaintiffs' Complaint is saturated with references to the HIPAA statutory scheme, any fair reading of the Complaint makes clear that the court deciding this case will be required to resolve the same disputed issues of federal law that this Court will be required to decide in its sister case, *Unlock Health*. As the Supreme Court has repeatedly made clear, when "the vindication of a right under state law necessarily turned on some construction of federal law," the claim arises under federal law for purposes of federal question jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

Therefore, for the reasons that follow, this case is properly before this Court, and Plaintiffs' motion to remand and request for attorneys' fees should be denied.

## RELEVANT BACKGROUND

On June 11, 2026, Plaintiffs filed a 412-paragraph class action Complaint against HCA, Inc. ("HCA") and Urgent Care Enterprises, LLC d/b/a CareNow ("CareNow") in the Tennessee

[1] A comparison of Plaintiffs' Complaint with the allegations asserted by their attorneys in *Unlock Health* confirms that the cases rely on the same basic facts and law. In fact, the two complaints share ***some 80 paragraphs verbatim*** and ***at least five dozen other paragraphs*** with substantively similar allegations. (*Compare* Compl. ¶¶ 10, 11, 20, 22, 74–75, 77, 84, 87–92, 104–116, 117–148, 185–202, 210–243 *with Unlock Health* Compl. ¶¶ 13, 14, 19, 20, 70–71, 72, 81, 84–89, 104–118, 119–154, 207–222, 256–287. The complaints also assert overlapping causes of action. *Compare* Compl. ¶¶ 263–375 (alleging claims for negligence, negligence per se, and breach of fiduciary duty) *with Unlock Health* Compl. ¶¶ 454–470, 480–505 (alleging claims for negligence and unjust enrichment, among others).)

Circuit Court in Nashville. (ECF No. 1-1, "Complaint" or "Compl.") According to Plaintiffs, HCA owns "thousands of hospitals, surgery centers, and related medical facilities throughout the United States" and is the corporate parent of CareNow, "a covered entity under HIPAA that owns and operates clinics nationwide." (*Id*. ¶¶ 5–6.) Plaintiffs are patients who used CareNow's online appointment-making services. (*Id.* ¶ 32.)

## I. <u>Plaintiffs' Allegations.</u>

Plaintiffs allege that Defendants used certain "source code" and "tracking technologies" that collected information about them when they interacted with CareNow's appointment-making websites and patient portals. Specifically, Plaintiffs allege that when they made online appointments, "Defendant[s] shared (1) that patients had made an appointment, (2) the time and date they made the appointment, (3) their patient status, (4) the healthcare provider they made the appointment with, and (4) [sic] a trove of personal identifying information ('PII')" with third-party marketing and analytics companies, like Google. (*Id.* ¶ 3; *see also id.* ¶¶ 47, 80.) Plaintiffs also allege that the source code intercepted and redirected: "(a) Patient IP addresses; (b) Unique, persistent patient cookie identifiers; (c) Device identifiers; (d) Account numbers; (e) URLs; (f) Other unique identifying numbers, characteristics, or codes; and (g) Browser-fingerprints." (*Id.* ¶ 79.)

### A. <u>The Complaint Alleges Plaintiffs' Information was Protected by HIPAA.</u>

Plaintiffs allege that this information collected by Defendants is "specifically protected" by "federal law under HIPAA and its implementing regulations, which are promulgated by HHS." (*Id.* ¶ 227.) According to Plaintiffs, this information relates to patients' "past, present, or future physical or mental health or condition ***pursuant to 45 C.F.R. § 160.103***," (*id.* ¶ 94), and "[s]uch Protected Health Information, including Plaintiffs' patient status, their medical conditions, and

when and where they sought treatment are ***specifically protected by HIPAA against unauthorized disclosure to third parties***." (*Id.* ¶ 181 (emphasis added).) Plaintiffs also allege that 45 C.F.R. § 164.514 prohibits disclosing patient names, and other unique characteristics or codes, (*id.* ¶ 221), and that specific provisions of HIPAA's implementing regulations define IP addresses, cookies, and browser-fingerprints as protected personal identifiers. (*See id.* ¶¶ 121, 126, 146 (citing 45 C.F.R. § 164.514(b)(2)(i)(O), 45 C.F.R. § 164.514(b)(2)(i)(H), (J), (M), (N), (R), and 45 C.F.R. § 164.514(b)(2)(i)(M), (R); *see also* ¶ 236.)

### B. The Complaint Alleges that HIPAA Creates the Duty and Sets the Standard of Care Defendants Were Obligated to Follow.

Plaintiffs allege that Defendants are "covered entities" subject to HIPAA and, as such, were "obligated to maintain the confidentiality of patients' Protected Health Information, including information about the provision of medical services, under state and federal law, including [HIPAA]." (*Id.* ¶ 7.)

Plaintiffs further allege that HIPAA's Privacy Rule "establishes national standards to protect individuals' medical records and other individually identifiable health information (collectively defined as 'protected health information')." (*Id.* ¶ 228.) The HIPAA Privacy Rule "requires covered entities and business associates to maintain appropriate safeguards to protect the privacy of PHI and sets limits and conditions on the uses and disclosures that may be made of PHI without authorization. 45 C.F.R. § § 160.103, 164.502." (*Id.* ¶ 233.) The Complaint cites no Tennessee statute, regulations, or court decisions that require Defendants to safeguard Plaintiffs' PHI. The Complaint ties Defendants' duty and obligation to do so to federal law exclusively.[2]

---

[2] Mirroring *Unlock Health*, Plaintiffs capitalize the terms "Protected Health Information" and "PHI" throughout their Complaint. The Complaint defines "protected health information" using the federal HIPAA Privacy Rule, 45 C.F.R. § 160.103. (*See* Compl. ¶ 230.)

### C. <u>The Complaint Alleges that Defendants Knowingly Violated HIPAA.</u>

Plaintiffs allege that "[d]espite these obligations," Defendants installed source code that disclosed patients' protected health information to third parties, such as Google, "***knowing it constituted a violation of HIPAA*** and state law." (*Id.* ¶ 8 (emphasis added).) Plaintiffs likewise allege that by installing the source code and tracking technologies on their websites, "Defendant[s] 'sold' Plaintiffs' and Class Members' PHI to Google as that term is ***defined under HIPAA***." (*Id.* ¶ 203 (emphasis added).)

Plaintiffs further allege that Defendants ***"knowingly" violated HIPAA***, which they say is a criminal offense ***under 42 U.S.C. § 1320d-6***. (*Id.* ¶ 221–235 (emphasis added).) Plaintiffs allege that Defendants knew their use of tracking technologies could violate HIPAA because the Office of Civil Rights at the U.S. Department of Health and Human Services ("HHS") issued federal regulatory guidance on tracking technologies for HIPAA-covered entities, (*id.* ¶ 10; *see also* ¶ 112 (quoting HHS's guidance forbidding disclosure of PHI without authorization or a business associate agreement), ¶ 225 (quoting HHS guidance to "regulated entities" about the use of tracking technologies that could result in "violations of the HIPAA Rules"), and ¶¶ 239–240 (block quoting HHS guidance and amendments on tracking technologies).) Plaintiffs also allege that Google recently warned HIPAA-covered entities that, in order to comply with HIPAA, covered entities "must refrain from exposing to Google any data that may be considered Protected Health Information" as defined by HIPAA and "may only use Google Analytics on pages that ***are not HIPAA-covered***." (*Id.* ¶ 11; *see also* ¶ 107 ("Google Analytics ***is not appropriate for HIPAA-covered entities like Defendant***.") (emphasis added).)

Given Plaintiffs' fundamental reliance on federal law for their allegations and claims, Defendants filed a Notice of Removal on July 16, 2026, on grounds that Plaintiffs' allegations

necessarily raise substantial and disputed questions of federal law relating to HIPAA, HIPAA's Privacy Rules and Security Rule, 45 C.F.R. Parts 160 and 164, and 42 U.S.C. § 1320d-6. (ECF No. 1.) On August 17, 2026, Plaintiffs filed a Motion to Remand, arguing that their Complaint is merely a "garden-variety Tennessee tort and contract action" and should be remanded to the Tennessee Circuit Court in Nashville. (ECF Nos. 12, 13.)

## ARGUMENT & AUTHORITY

It is well settled that an action falls within the jurisdiction of the federal courts when a "plaintiff's well-pleaded complaint raises an issue of federal law." *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 584 (6th Cir. 1990). Thus, while plaintiffs generally are free to choose the forum in which they will proceed, they can avoid federal jurisdiction only by "exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). And, that reliance must be genuine. Indeed, federal courts have federal-question jurisdiction over causes of action "when plaintiffs artificially plead their complaint in order to avoid federal jurisdiction of claims that are federal in nature." *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989) (internal quotation marks omitted). To that end, federal jurisdiction over a state-law claim exists where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007).

In this case, Plaintiffs have based virtually all of their claims on allegations that "Plaintiffs and Class Members' PHI is protected by federal law under HIPAA and its implementing regulations, which are promulgated by HHS," and that Defendants' allegedly misused that PHI "knowing it constituted a violation of HIPAA…." (Compl. ¶¶8, 227.) Plaintiffs' Complaint therefore raises substantial federal issues and necessarily invokes the jurisdiction of this Court.

## I. Plaintiffs Necessarily Raise Federal Issues.

A complaint need not expressly include a cause of action under federal law to invoke federal-question jurisdiction. Courts have held that where plaintiffs "rely on violations of federal law, ***implicitly or explicitly***, to establish violations of state law," they have necessarily raised a disputed issue of federal law. *Landers v. Morgan Asset Management*, 2009 WL 962689, at *6 (W.D. Tenn. Mar. 31, 2009) (emphasis added). Such is the case here. Plaintiffs repeatedly rely on alleged HIPAA violations for the gravamen of their state-law claims.

For example, Plaintiffs' Count II-Negligence *Per Se* claim alleges that Defendants were "required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class Members' Private Information" and that by violating "HIPAA, the HIPAA Privacy Rules and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C," Defendants directly and proximately caused unauthorized access and disclosure of Plaintiffs' PHI. (*Id.* ¶¶ 287, 295.) Plaintiffs do not dispute that Count II requires a determination of whether these federal laws were violated. Nor could they. "The paradigmatic example of a state claim with an embedded ... federal issue is a common-law claim for negligence per se based on the violation of a federal duty." *Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 756 (E.D. Ky. 2014) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986)).

Likewise, Plaintiffs' Count VII-Tennessee Wiretap claim alleges that Defendants cannot satisfy the "party exception" to the statute because they committed criminal acts in "***violation of HIPAA, particularly 42 U.S.C. § 1320d-6***." (*Id.* ¶ 394 (emphasis added).)

Plaintiffs argue, however, that the Court should disregard Count II and Count VII for purposes of jurisdiction because "five of Plaintiffs' seven counts contain no reference to HIPAA or any other federal statute at all." (ECF No. 13 at 12.) Stated differently, Plaintiffs say because most claims do not depend on federal law, the Court should ignore those that do. This argument is fatally flawed for at least two obvious reasons.

***First***, under 28 U.S.C. § 1367, "[i]f ***any*** of the claims come within the original jurisdiction of the federal courts, removal is proper as to the whole case." *Gobble v. Hellman*, 2002 WL 34430286, at *4 (N.D. Ohio Mar. 26, 2002) (citing *Franchise Tax Bd.*, 463 U.S. at 28 and 28 U.S.C. § 1367) (emphasis added); *see also Everage v. Gayheart*, 800 F.Supp.3d 759, 765–66 (E.D. Ky. 2025) (explaining that a district court has supplemental jurisdiction over state claims if: (1) the court has subject matter jurisdiction over the federal claim, and (2) the state and federal claims derive from a common nucleus of operative fact). Plaintiffs cannot avoid this Court's jurisdiction simply by pleading additional state-law claims "in the alternative."

***Second***, Plaintiffs are wrong that their other claims do not reference (or rely on) HIPAA or other federal statutes. To the contrary, Plaintiffs' other claims specifically "incorporate by reference all paragraphs above as if fully set forth herein." (Compl. ¶¶ 263 (Negligence), 296 (Breach of Implied Contract), 335 (Unjust Enrichment), 358 (Invasion of Privacy), 368 (Breach of Fiduciary Duty).). These "incorporated" allegations reveal the intrinsic federal nature of Plaintiffs' case. For example, in claiming that "Defendant[s] breached the fiduciary duty ... owed to Plaintiffs and the Class Members ... by failing to protect, and intentionally disclosing, their PHI," Plaintiffs are necessarily relying on duties they say are imposed by HIPAA. They do not define or describe Defendants' purported fiduciary duty in any other way. This claim, therefore, will necessarily depend on finding a violation of federal law, and that gives rise to federal jurisdiction. *C.f.*

*Landers*, 2009 WL 962689, at *8 ("[A]part from stating that Defendants allegedly violated the 1940 Act § 13, Plaintiffs do not assert that Defendants violated their fiduciary duties in any other way.").

Far from "merely referencing HIPAA," (*see* ECF No. 13 at 2), the Complaint is brimming with allegations about federal laws and regulations Plaintiffs say have been violated. Plaintiffs cite HIPAA, its implementing regulations, 42 U.S.C. § 1320d, and HHS's regulatory guidance ***more than 100 times*** in the Complaint. (*See generally* Compl.) Indeed, page after page of the Complaint is devoted entirely to these federal regulations and the ways in which Plaintiffs say they govern Defendants' use of tracking technologies. (*Id*. ¶¶ 221–243.) And, importantly, in making their case for class action treatment, Plaintiffs are explicit in alleging that the "common legal and factual questions" requiring resolution in this case include "[w]hether Defendants intentionally violated HIPAA…." (*Id.* ¶ 255.) This allegation confirms that any determination of liability here will unavoidably require and depend on a court's interpretation and application of HIPAA and its implementing regulations.[3]

Given what the Complaint says, Plaintiffs' insistence that they bring only a "garden-variety Tennessee tort and contract action" is misleading. More important, it is not dispositive of removal. *In re Otter Trail Power Co*., 116 F.3d 1207, 1213 (8th Cir. 1997) ("[A] plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction

[3] Beyond the sheer volume of references and citations to federal statutes and regulations, the substance of these allegations also reveals how the alleged HIPAA violations are inseparable from with Plaintiffs' state-law claims. Plaintiffs allege that the information collected by Defendants' websites is specifically protected by HIPAA, (Compl. ¶ 227); that Defendants have a duty to protect this information given their "status as covered entities under HIPAA," (*id.* ¶ 211); that HIPAA and its implementing regulations set the "national standards" for protecting the information, (*id.* ¶ 228); and that Defendants unlawfully sold and disclosed information in knowing violation of HIPAA. (*Id.* ¶¶ 8, 10, 203.)

exists"); *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 475 (6th Cir. 2008) ("Although the well-pleaded-complaint rule focuses on what the plaintiff alleges, it allows a court to look past the words of a complaint to determine whether the allegations, no matter how the plaintiff casts them, ultimately involve a federal question."); *Woodson v. Bing*, 2024 WL 3609084, at *5 (M.D. Tenn. July 30, 2024) (Crenshaw, J.) (same). Here, Plaintiffs' necessary reliance on HIPAA to define the duties and obligations that serve as the foundation of their claims makes clear this case requires a decision on a federal question that precludes remand. *See Landers*, 2009 WL 962689, at *6 (finding federal jurisdiction where the plaintiffs' "allude[d] to duties created by federal law as a basis for their state law causes of action.").[4]

[4] This conclusion is made even clearer still by the fact Plaintiffs' lawyers have chosen federal courts throughout the country as their forum to litigate near-identical allegations and claims ***at least 10 times since 2024***. *See, e.g.*, *Doe v. InteliChart, LLC*, No. 25-cv-00622, ECF No. 1 (W.D.N.C. filed Aug. 19, 2025) (class action filed by Stranch, Jennings & Garvey and Cohen & Malad alleging HIPAA-covered business deployed Google Analytics on patient portals, "purposefully and intentionally disclosed patients' Protected Health Information to [Google]" via tracking technologies "without patients' knowledge, authorization, or consent," and asserting claims premised on whether the defendant violated HIPAA by sharing PHI with Google); *Doe v. Unlock Health Inc.*, No. 26-cv-00289, ECF No. 1 (M.D. Tenn. filed Mar. 11, 2026) (class action filed by Stranch, Jennings & Garvey and Cohen & Malad alleging healthcare technology vendor deployed Google Analytics on online health risk assessment forms, sharing patients' "Protected Health Information" with Google and Facebook in violation of HIPAA, asserting claims requiring interpretation of whether tracking technology disclosures constitute HIPAA violations); *Doe v. Chestnut Health Sys., Inc.*, No. 24-cv-01475, ECF No. 1 (C.D. Ill. filed Nov. 22, 2024) (class action filed by Cohen & Malad and Stranch, Jennings & Garvey alleging HIPAA-covered hospital deployed tracking technologies on its website that transmitted patients' PHI to Facebook, Google, and other third parties, without consent in violation of HIPAA); *Doe v. Deaconess Ill. Union Cnty. Hosp., Inc.*, No. 24-cv-02284, ECF No. 1 (S.D. Ill. filed Oct. 4, 2024) (class action filed by Cohen & Malad and Stranch, Jennings & Garvey alleging hospital deployed tracking technologies, disclosing patients' PHI to Facebook and Google without authorization in violation of HIPAA); *Juenger v. Deaconess Health Sys., Inc.*, No. 24-cv-02332, ECF No. 1 (S.D. Ill. filed Oct. 17, 2024) (later consolidated with *Doe v. Deaconess Ill. Union Cnty. Hosp., Inc.*, No. 24-cv-02284) (class action filed by Cohen & Malad and Stranch, Jennings & Garvey alleging healthcare entity deployed tracking technologies, including Google Analytics, which shared patients' PHI with Facebook, Google, and other third parties, without consent in violation of HIPAA); *Hannant v. Culbertson Mem'l Hosp. Found.*, No. 24-cv-04164, ECF No. 1 (C.D. Ill. filed Sept. 6, 2024) (class action filed by Cohen & Malad and Stranch, Jennings & Garvey alleging hospital deployed

## II. <u>Plaintiffs' Claims are Actually Disputed and Require a Decision on Substantial Questions of Federal Law.</u>

Even if the Court were to decide that Plaintiffs have not explicitly pled a federal question, their Complaint still would vest this Court with jurisdiction. As Plaintiffs necessarily concede, federal jurisdiction is proper where adjudicating a particular claim "requires resolution of a substantial question of federal law." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) (citing *Franchise Tax Bd.*, 463 U.S. at 13). Indeed, it is well settled that "[e]ven though state law creates [a party's] cause of action, its case might still arise under the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *Id*. This is so where "a right ... created by the ... laws of the United States is an element, and an essential one, of the plaintiff's cause of action." *Id.* (quoting *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 112 (1936)).

For more than 100 years, federal courts have recognized that "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal*

---

tracking technologies, including Google Analytics, on its website and patient portal pages, disclosing patients' PHI without authorization in violation of HIPAA); *Gittings-Barrera v. Mem'l Hosp. Ass'n*, No. 24-cv-04167, ECF No. 1 (C.D. Ill. filed Sept. 12, 2024) (class action filed by Cohen & Malad and Stranch, Jennings & Garvey alleging hospital deployed tracking technologies and transmitted patients' PHI to Facebook, Google, and other third parties without consent in violation of HIPAA); *Noftz v. KSB Hosp. Found.*, No. 24-cv-08100, ECF No. 1 (N.D. Ill. filed Sept. 5, 2024) (class action filed by Cohen & Malad and Stranch, Jennings & Garvey alleging hospital deployed tracking technologies to share patients' PHI with Facebook without consent in violation of HIPAA); *Clark v. Centene Corp.*, No. 26-cv-08955, ECF No. 1 (N.D. Cal. filed May 5, 2026) (class action filed by Cohen & Malad and Stranch, Jennings & Garvey alleging health insurer deployed tracking technologies on its website, disclosing patients' PHI to third parties in violation of HIPAA); *Doe v. Vill. Practice Mgmt. Co., LLC*, No. 24-cv-02882, ECF No. 1 (N.D. Ill. filed Apr. 10, 2024) (nationwide class action filed by Cohen & Malad and Stranch, Jennings & Garvey alleging medical system deployed tracking technologies, sharing patients' PHI with Facebook in violation of HIPAA). Indeed, that the instant Complaint is entirely derivative of *Unlock Health* and these other federal cases filed in California and elsewhere is undeniable based on that allegations that appear in Paragraph 340, which assert that Defendants' actions "intentionally violat[ed] California law."

*Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (citing *Hopkins v. Walker*, 244 U.S. 486, 490–91 (1917)). As the Supreme Court explained in *Grable*:

> The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Id.*; *see also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 391 (3d Cir. 2002) ("The state suit need not invoke a federal law in order to arise under it for removal purposes. It is sufficient that the merits of the litigation turn on a substantial federal issue that is an element, and an essential one, of the plaintiff's cause of action.") (internal quotation marks omitted); *Pruitt v. Honda of Am. Mfg., Inc.*, 2006 WL 889498, at *5 (M.D. Tenn. Mar. 28, 2006) ("[F]ederal question jurisdiction will lie over state-law claims that implicate significant federal issues.") (internal quotation marks omitted).

"Because there is no single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between non-diverse parties, the answer requires [courts] to examine the factors bearing on the substantiality of the federal question involved against the background of the federal-state division of responsibility for adjudicating disputes." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (internal quotation marks omitted). A substantial federal question exists if the interpretation of a disputed federal statute is "so important that it sensibly belongs in federal court." *Id.* at 552 (internal quotation marks omitted); *see also Capece v. The Depository Tr. & Clearing Corp.*, 2005 WL 4050118, at *8 (S.D. Fla. Oct. 11, 2005) ("resolution of [an] action required examination of the propriety of [a defendant's] actions, which could only be determined by reference to the federal laws and regulations establishing the scope of [defendant's] duties").

To be "disputed," plaintiffs need only allege a violation of a federal statute, rule or regulation, and that the alleged violation gives rise to their claim. *See Gobble*, 2002 WL 34430286, at *3 (because "several counts of [p]laintiff's breach of fiduciary duty claims depend upon whether [d]efendants violated their duties under the Federal Exchange Act and SEC rules and regulations ... the resolution of [the] claims requires construction and adjudication of substantial questions of federal law, and [therefore federal] jurisdiction ... is proper").

### A. **Plaintiffs' Claims Involve Disputed Federal Issues.**

Plaintiffs' claims repeatedly and expressly depend on alleged violations of HIPAA and its implementing regulations. Most directly, Plaintiffs' negligence *per se* claim alleges that HIPAA, the HIPAA Privacy and Security Rules, and 45 C.F.R. Parts 160 and 164 imposed the duties that Defendants allegedly breached by disclosing Plaintiffs' PHI to third parties. (Compl. ¶¶ 285–95 (Count II).) Likewise, Plaintiffs' claim under Tennessee's wiretap statute alleges that Defendants knowingly disclosed individually identifiable health information in violation of 42 U.S.C. § 1320d-6, including for "commercial advantage," and relies on these alleged federal violations to defeat the statute's party exception by asserting that Defendants intercepted the communications for the purpose of committing a criminal or tortious act. (*Id.* ¶¶ 389–99 (Count VII).) The Complaint further incorporates these alleged HIPAA violations into Plaintiffs' remaining state-law theories, including negligence, breach of implied contract, and breach of fiduciary duty, each of which rests in material part on the contention that Defendants were obligated by federal law to safeguard Plaintiffs' PHI and prohibited from disclosing it without authorization. (*See, e.g.*, *Id.* ¶¶ 221–43, 263–84, 296–334, 368–75.) Thus, adjudicating Plaintiffs' claims will require the Court to resolve disputed questions of federal law, including whether the information allegedly transmitted constitutes PHI under HIPAA, whether the alleged transmissions were unauthorized or otherwise

impermissible under HIPAA Rules, and whether Defendants knowingly disclosed individually identifiable health information in violation of § 1320d-6.

Defendants reject Plaintiffs' allegations and deny that they have violated the applicable federal laws in any way. In order to adjudicate Plaintiffs' claims, however, the Court must resolve these disputed federal legal issues that are material to the case. As the applicable authority makes clear, it is the need for that resolution that makes this case appropriate for federal jurisdiction. *See Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998) (affirming removal because state law claims related to delisting of securities offering were "necessarily based on an assumed violation of the [SEC] rules governing such procedures") (internal quotation marks omitted); *see also D'Alessio v. NYSE*, 258 F.3d 93, 101 (2d Cir. 2001) (finding federal jurisdiction where state law claims were rooted in alleged violations of federal securities laws and depended on interpretation of federal regulations). This is all the more compelling in light of the fact that this Court will be called upon to resolve the same legal issues based on very similar allegations in deciding the *Unlock Health* case.

### B. The Alleged Violations of Federal Law Are Essential Elements of Plaintiffs' Claims.

Throughout their Complaint, Plaintiffs repeatedly allege that federal law imposed certain obligations on Defendants, and that Defendants failed to adhere to those federally mandated obligations. With such allegations, Plaintiffs have inextricably intertwined their state-law claims with the need for proof of a violation of federal law. (*See, e.g.,* Compl. ¶¶ 7–8, 10–11, 107, 112, 203, 211, 221–43, 255(c), 287, 389–99, 405–06.)[5]

---

5 For example, Plaintiffs' Complaint includes a section entitled "Plaintiffs' and Class Members' Protected Health Information is protected Against Unauthorized Disclosure by Both State and Federal Law." (Compl. ¶¶ 221–243.) Despite this title, however, there is not one direct

In an effort to side-step the jurisdictional effect of these allegations, Plaintiffs argue that federal law serves merely as an "alternative theory" for liability and is not essential to a resolution of their claims. (ECF No. 13 at 6–8.) Even a cursory review of the Complaint proves this is false. Nothing in the Complaint suggests that Plaintiffs refer to federal law merely to "support" or as an "alternative theory" for their claims. Rather, the alleged federal law violations serve as an essential and foundational element to Plaintiffs' claims.

For example, when asserting their claim for violation of T.C.A. § 39-13-601, Plaintiffs repeatedly state the claim is predicated on a "violation of 42 U.S.C. § 1320d-6." (Compl. ¶¶ 389–90, 394 (alleging "Defendant[s] … violated 42 U.S.C. § 1320d-6 by intentionally disclosing Plaintiffs and Class Members PHI to Third Parties for the purpose of obtaining 'commercial advantage' over [their] rivals in the marketplace"); ¶ 405 ("Defendants [were] aware that deploying such Tracking Technologies was illegal under HIPAA").) Having framed their claims in this way, the "vindication" of Plaintiffs' alleged rights necessarily turns on the construction and application of federal law, and thus triggers the subject matter jurisdiction of this Court. *See Franchise Tax Bd.*, 463 U.S. at 8–9 ("arising under" jurisdiction found where "the vindication of a right under state law necessarily turned on some construction of federal law"); *see also D'Alessio*, 258 F.3d, at 101 (where federal law acts as "gravamen" of plaintiff's state law claim, exercise of federal jurisdiction is appropriate); *Balas v. Leishman-Donaldson*, 976 F.2d 733 (6th Cir. 1992) (finding removal was proper because "the complaint, on its face, alleged within each state law tort

reference to Tennessee law in this section of the Complaint. Instead, this section relies on no less than a dozen specific references to federal regulations and authoritative HHS guidance.

count a claim [a federal violation by] defendants while acting under color of authority vested in them by state law").[6]

Again, the relevant inquiry is not whether federal law is an essential element of Plaintiffs' claims. Rather, the test is whether this case "sensibly belongs in federal court." *Eastman*, 438 F.3d at 552. After all, if Plaintiffs' argument were accepted, no federal issue – regardless of substance – would ever be sufficient to invoke federal-question jurisdiction so long as it was theoretically possible to resolve the case on other, non-federal grounds. Nothing in the relevant case law supports such a myopic reading of the well-pleaded complaint rule.

### C. <u>The Exercise of Federal Jurisdiction Will Not Disturb the Balance of Federal and State Judicial Responsibility.</u>

Plaintiffs insist that if this Court were to retain this case the balance of state and federal judicial responsibilities will be upended. (*See* ECF No. 13 at 10.) To the contrary, ***keeping*** this case in federal court is the only practical way to avoid needless and problematic issues that will arise if this case is allowed to proceed on an uncoordinated, parallel track in state court. Indeed, because Plaintiffs' allegations and claims necessarily require a decision from the Court as to whether HIPAA-covered entities violate that federal statute and its implementing regulations by

---

[6] Tacitly acknowledging that Count II and Count VII pose federal questions in the exact way Defendants point out, Plaintiffs urge the Court to focus on the possibility that a jury might decide those claims on non-federal grounds – for example, for Count II, "Google's own published warnings and prevailing industry practice" about the use of tracking technology. (ECF No. 13 at 6–7.) Plaintiffs' purported alternative state-law theories are illusory. According to the Complaint, the Google warnings expressly identify HIPAA as the law imposing the relevant duties. (Compl. ¶¶ 11, 107.) Count VII is likewise functionally dependent on a HIPAA violation because the Tennessee Wiretap Act's party exception otherwise precludes liability. Although Plaintiffs plead an alternative predicate of a "knowing breach of Defendant's common law and fiduciary duties," that alternative is circular: the Complaint defines those purported common-law duties by reference to HIPAA, including HIPAA's protections and the obligations to safeguard Plaintiffs' PHI. (*See* Compl. ¶¶ 211, 227–35, 370–75.)

deploying Google Analytics, this Court's exercise of jurisdiction would not upset any congressionally approved balance of federal and state judicial responsibilities. *See Coventry Health Care, Inc. v. Caremark, Inc.*, 705 F. Supp. 2d 921, 931 (M.D. Tenn. 2010) ("[A]lthough framed as a breach-of-contract action between private parties, the present case amounts to a request for a judicial declaration as to the impact of federal law on the parties' mutual responsibilities. Considered in that light, it does not appear that jurisdiction over this action would upset any congressionally approved balance of federal and state judicial responsibilities.").

Rather than disrupt the division of responsibility between state and federal courts, interpretation of these federal statutes, rules, and regulations by a federal court will promote uniformity of decision and avoid the undesirable alternative – namely, forcing this Court and other federal courts to contend with potentially inconsistent state court rulings as to how admittedly important ***federal*** privacy laws should be applied. *See Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) ("Where the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts.").[7]

---

[7] Plaintiffs also complain that exercising federal jurisdiction in the absence of a private right of action under HIPAA threatens the balance of federal and state judicial responsibilities. (*See* ECF No. 13 at 10.) This argument has no merit. It is well settled that the absence of a private right of action under a federal statute is not dispositive of federal jurisdiction. *See Eastman*, 438 F.3d, at 552 ("*Merrell Dow* should be read in its entirety as ***treating the absence of a federal private right of action as evidence relevant to, but not dispositive of***, the 'sensitive judgments about congressional intent' that § 1331 requires.") (emphasis added); *West 14th Street Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (exercise of federal jurisdiction appropriate even "***assuming that plaintiffs have no private right of action*** under [federal law].") (emphasis added). Congress empowered the federal courts to redress violations of HIPAA, and HHS is charged with enforcement of that statute. Nothing about this case, therefore, risks upsetting the balance of federalism.

Congress's enforcement design reinforces this conclusion. Congress chose to enforce HIPAA through HHS's administrative authority under 42 U.S.C. § 1320d-5 and authorized criminal penalties in federal court under 42 U.S.C. § 1320d-6, rather than through private litigation. That choice reflects that HIPAA violations are a matter of federal concern, not merely evidence relevant to a state-law duty. Plaintiffs themselves repeatedly invoke § 1320d-6's criminal provisions, alleging that Defendants knowingly disclosed individually identifiable health information for "commercial advantage." (Compl. ¶¶ 234–35, 389–90.) By empowering HHS to enforce the HIPAA Rules and authorizing criminal penalties in federal court, Congress demonstrated that federal courts are the intended forum for construing HIPAA's requirements. This parallels *Landers*, where the court found that Congress's authorization of criminal penalties and SEC enforcement for 1940 Act violations negated any federalism concern. *Landers*, 2009 WL 962689, at *8.

Despite what Plaintiffs say, this case is not like the situation addressed in *Merrell Dow Pharm, Inc. v. Thompson*. In that case, the federal statute served as an evidentiary standard incorporated into a negligence claim. Here, HIPAA serves not merely an evidentiary standard; according to Plaintiffs, HIPAA defines the core duties, prohibitions, protected information, and criminal liabilities that form the substance of their claims. Those federal issues involve genuine interpretive disputes about the meaning and scope of HIPAA's regulatory terms in a technology context, including whether appointment-scheduling data and patient-portal browsing information constitute "individually identifiable health information" or "protected health information" under 45 C.F.R. § 160.103; whether use of Google Analytics constitutes an unauthorized "disclosure" under the HIPAA Privacy Rule, *see* 45 C.F.R. §§ 164.502, 164.508; and whether Defendants' conduct constitutes a "knowing" violation subject to criminal penalties under § 1320d-6. These

are not mere applications of settled law to undisputed facts; they require the Court to construe federal regulatory terms, which is precisely the type of interpretive dispute that belongs in federal court. *See Eastman*, 438 F.3d at 552 (substantial federal question exists where "the interpretation of a federal statute" is "so important that it sensibly belongs in federal court").

Finally, HHS has affirmatively exercised regulatory authority over the precise issue before the Court. HHS has issued Bulletins and related guidance specifically addressing tracking technologies deployed by HIPAA-covered entities and business associates. The December 2022 Bulletin, as amended in June 2024, explains that tracking technologies on user-authenticated patient portals generally have access to PHI, may capture IP addresses, medical record numbers, appointment dates, and other identifying information, and that tracking-technology vendors such as Google are business associates when they create, receive, maintain, or transmit PHI for a covered function, requiring a business associate agreement. (Compl. ¶¶ 238–42.) HHS has, therefore, not merely promulgated a general privacy regime; it has engaged directly with the application of that regime to the technologies at issue here. That ongoing federal regulatory engagement confirms that a federal court is the natural forum for construing HHS guidance and applying the HIPAA framework to these technologies.

### D. <u>Plaintiffs' Claims Are Not Tennessee-Specific.</u>

In an attempt to distract from the federal nature of their claims, Plaintiffs argue that a ruling on the issues presented by their Complaint would be Tennessee-specific and carry "no binding or persuasive effect beyond this litigation." (ECF No. 13 at 13.) Nothing about the Complaint supports this argument. Plaintiffs do not limit their allegations to any Tennessee-specific situation involving Defendants' purported misuse of these tracking technologies. To the contrary, the Complaint alleges that ***any use*** of tracking technologies without a patient's express consent is a

fundamental violation of the entire HIPAA regulatory scheme and, thus, has nationwide implications.[8] The fact the very same issues alleged in the Complaint, involving the exact same tracking technologies and vendors, are currently being litigated in federal courts across the United States – including in this Court – proves this litigation is not limited in its potential scope or effect. *See e.g., Doe v. Unlock Health,* No. 3:26-cv-00289 (M.D. Tenn.); *Doe v. Experity, Inc.*, No. 3:26-cv-2667 (N.D. Cal.); *see also Landers*, 2009 WL 962689, at *9 (recognizing the "substantial risk of inconsistent adjudications" presented when cases raising the same theories are currently pending in federal court.).[9]

### III. <u>Plaintiffs Rely on Inapposite Case Law That Does Not Support Remand.</u>

The Complaint's pervasive reliance on HIPAA also lies in sharp contrast to the cases that Plaintiffs describe as "identical" and "indistinguishable." *See e.g., Doe v. Reproductive Medicine Associates of Philadelphia, P.C.,* 2023 WL 5961650 (E.D. Pa. Sept. 13, 2023) (finding that HIPAA was referenced in only the complaint's "background" section for "context"); *In re Anthem*, *Inc.*, 129 F. Supp. 3d 887, 897 (N.D. Cal. 2015) (holding that a "single reference to HIPAA in a sixty-three-paragraph complaint" was "insufficient to provide basis for removal.").

---

8 Plaintiffs also allege that HCA and CareNow operate "thousands" of hospitals, surgery centers, and clinics "nationwide," (Compl. ¶¶ 5–6), and that "[b]y any measure, Google is the world's largest data company" and operates "the world's most popular" ad services, including Google Analytics, which is "far and away the web's most dominant analytics platform" and has "massive reach." (*Id.* ¶¶ 104, 105.) Given these allegations, so too would any decision on whether Defendants' use of Google Analytics violated HIPAA. *See Landers*, 2009 WL 962689, at *9 (acknowledging the potential market impact and "extensive implications for the business practices" that could result from a decision.)

9 Between January 2022 and February 2026, some ***246 class action lawsuits*** were filed against healthcare providers for pixel-related violations of HIPAA. (*See* Curve Compliance, *Healthcare Pixel Lawsuit Tracker*, https://www.curvecompliance.com/healthcare-pixel-lawsuit-tracker-settlements-compliance-lessons (last visited Aug. 26, 2026)).

Nearly all of the cases on which Plaintiffs rely also involve materially different facts. For example, *C.J. by & through Brady v. Truman Medical Center, Inc.*, involved a stolen laptop and cited HIPAA as just one possible standard of care for negligence. 2020 WL 3473651, at *3 (W.D. Mo. June 25, 2020). Likewise, *Harmon v. Maury County*, involved the inadvertent disclosure of prescription drugs to a single individual, not an alleged systematic deployment of new technology across thousands of locations. 2005 WL 2133697 (M.D. Tenn. Aug. 31, 2005); *see also Marshall v. Georgia CVS Pharmacy, LLC*, 580 F. Supp. 3d 1301 (N.D. Ga. 2022) (involving a nurse practitioner shouting a patient's false-positive COVID-19 test result in a busy retail store); *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718 (E.D. Pa. 2011) (involving a lost USB drive containing patient names, addresses, Social Security numbers and health histories). None of the cases cited by Plaintiffs pleads a criminal violation under 42 U.S.C. § 1320d-6 nor relies on that alleged criminal violation as a predicate to a claim of unlawful wiretapping. *See e.g., Lamarr v. Goshen Health System, Inc.,* 2023 WL 6690582 (S.D. Ind. Oct. 12, 2023); *Elkins v. Southeastern Indiana Health Management, Inc.*, 2023 WL 6567438 (S.D. Ind. Oct. 10, 2023).

Again, unlike these other cases, Plaintiffs' allegations in this case foundationally rely on HIPAA to define the protected information (Compl. ¶ 227), create Defendants' duty to protect the information (*id.* ¶ 211), define the standard of care for protecting the information (*id.* ¶ 228), restrict activities regarding the information (*id.* ¶¶ 8, 203), and statutorily penalize violations of those standards, (*id.* ¶ 235). "[R]emoval to federal court is proper where the state action simply provides the vehicle for the 'vindication of rights and ... relationships created by federal law.'" *Landers*, 2009 WL 962689, at *7 (quoting *Donovan v. Rothman*, 106 F. Supp. 2d 513, 517 (S.D.N.Y. 2000)). That is particularly true where, as here, Plaintiff have expressly asked this Court to decide "[w]hether Defendants intentionally violated HIPAA." (Compl. ¶ 255.)

## CONCLUSION

In this case, Plaintiffs ask this Court to impose sweeping liability on Defendants. As the basis for this request, the Complaint rests on the same basic allegations that Plaintiffs' lawyers used in bringing *Unlock Health*, and they have expressly asserted in this case "that Defendants violated HIPAA." (Compl. at ¶¶ 8, 255(c).) Having alleged violations of federal law, Plaintiffs have invoked the jurisdiction of this Court. Likewise, given *Unlock Health* and the other related cases, it is clear that the instant case is nothing more than a blatant attempt to litigate substantially similar claims outside of this Court's supervision and oversight. Despite Plaintiffs' statements to the contrary, however, nothing about federalism entitles Plaintiffs to take two bites at the proverbial apple, and the Court should not shy from denying their motion to remand in order to prevent their obvious attempt at an end-run around its authority to decide claims that fall squarely within its jurisdiction.

For all the foregoing reasons, therefore, Plaintiffs' motion to remand and request for attorneys' fees should be denied.

**DATED** this 31st day of August, 2026.

*/s/ W. Brantley Phillips, Jr.*
W. Brantley Phillips, Jr.
Kathryn Hannen Walker
Taylor M. Sample
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, TN 37203
(615) 742-6200
bphillips@bassberry.com
kwalker@bassberry.com
taylor.sample@bassberry.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 31, 2026, the foregoing was filed electronically filed with the Clerk of Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipts. Parties may access this filing through the Court's electronic filing system.

*/s/ W. Brantley Phillips, Jr.*