**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JANE DOE, JANET DOE, and JILL DOE, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 3:26-cv-00993** |
| **HCA HEALTHCARE, INC., and URGENT CARE ENTERPRISE, LLC, d/b/a CARENOW,** | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION

This case concerns the alleged disclosure of patients' private health information through online tracking technologies used by HCA Healthcare, Inc. and Urgent Care Enterprise, LLC, d/b/a CareNow ("Defendants"). Plaintiffs brought this putative class action in Tennessee state court, asserting seven claims under Tennessee law. (Doc. No. 1-1). Defendants removed the case, based on Plaintiffs' extensive reliance on the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its implementing regulations raises substantial questions of federal law. (Doc. No. 1). Plaintiffs move to remand. (Doc. No. 12). They argue that their claims arise under state law and that federal issues implicated by their claims are not substantial enough to support federal question jurisdiction. (Doc. No. 13). The motion is ripe for decision (Doc. Nos. 12, 13, 15, 16) and, for the reasons below, will be granted.

## I. Factual Background

Plaintiffs allege that Defendants installed tracking technologies on websites and applications used to schedule medical appointments and access healthcare services. (Doc. No. 1-1 ¶¶ 32–116). According to Plaintiffs, Defendants permitted those technologies to transmit their

personally identifiable information ("PII") and protected health information ("PHI") to Google and other third parties without their knowledge or consent. (Id. ¶¶ 117–94). Plaintiffs bring seven claims under Tennessee law: negligence, negligence per se, breach of implied contract, unjust enrichment, invasion of privacy, breach of fiduciary duty, and violation of Tennessee's wiretap statute, Tenn. Code Ann. § 39-13-601. (Id. ¶¶ 263–411).

Plaintiffs identify several sources of Defendants' alleged duties, including state and federal law. They rely extensively on HIPAA to establish that the information disclosed was protected, that Defendants knew or should have known of the risks and restrictions on its disclosure, and that Defendants violated federal requirements. (Id. ¶¶ 107, 121, 126, 146, 211, 221–43, 255). Plaintiffs invoke HIPAA as the basis for their negligence per se claim and to overcome the so-called "party exception" to Tennessee's wiretap statute. (Id. ¶¶ 285–95, 376–411).

## II. Legal Standard

Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case can "arise under" federal law in two ways. Gunn v. Minton, 568 U.S. 251, 257 (2013). First, and "[m]ost directly, a case arises under federal law when federal law creates the cause of action asserted." Id. Second, a "special and small category" of cases may also arise under federal law, "even where a claim finds its origins in state rather than federal law." Id. at 258. Under the "substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law." Mikulski v. Centerior Energy Corp., 501 F.3d 555, 565 (6th Cir. 2007). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 568 U.S. at 258

(citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313–14 (2005)); see also Mikulski, 501 F.3d at 568–74 (applying the standard from Grable).

## III. Analysis

After consideration of the relevant factors, the Court finds that this case must be remanded for lack of subject matter jurisdiction. As the Court will explain, Defendants have identified disputed federal issues concerning the interpretation and application of HIPAA that Plaintiffs' negligence per se and Tennessee wiretap claims necessarily raise. The federal interest in resolving those issues, however, is not substantial enough to confer federal question jurisdiction.

### A. Disputed Federal Issue

The Court must first determine whether Plaintiffs' right to relief necessarily depends on a disputed issue involving the "validity, construction, or effect of federal law." Mikulski, 501 F.3d at 565. What, then, is the disputed federal issue necessarily raised here? Defendants argue that Plaintiffs' complaint is "brimming with allegations about federal laws and regulations," referencing HIPAA and related federal requirements "more than 100 times." (Doc. No. 15 at 9). Those references, Defendants argue, raise "interpretive disputes about the meaning and scope of HIPAA's regulatory terms in a technology context." (Id. at 18). Specifically, they identify disputes regarding

> whether appointment-scheduling data and patient-portal browsing information constitute "individually identifiable health information" or "protected health information" under 45 C.F.R. § 160.103; whether use of Google Analytics constitutes an unauthorized "disclosure" under the HIPAA Privacy Rule, see 45 C.F.R. §§ 164.502, 164.508; and whether Defendants' conduct constitutes a "knowing" violation subject to criminal penalties under § 1320d-6.

Id. Plaintiffs necessarily raise those issues, according to Defendants, in each claim by incorporating the "alleged HIPAA violations" into their "state-law theories." Id. at 13. Plaintiffs necessarily raise those issues most directly, Defendants argue, in their "negligence per se claim"

and "claim under Tennessee's wiretap statute," which depend on the alleged HIPAA violations. Id.

Plaintiffs respond that "[a] state-law claim does not 'necessarily raise' a federal issue where the complaint pleads alternative theories, at least one of which does not require resolution of a federal question." (Doc. No. 13 at 6). They maintain that "[n]one of Plaintiffs' causes of action depend exclusively on HIPAA" because they "need not prevail on any question under HIPAA to prevail on their state law claims." (Doc. No. 16 at 3). Plaintiffs further argue that because no federal issue is necessarily raised, there are none that are actually disputed. (Doc. No. 13 at 9).

The Court finds that Plaintiffs necessarily raise disputed federal issues, but only through their negligence per se and Tennessee wiretap claims. In their negligence per se claim, Plaintiffs allege that HIPAA and its implementing regulations required Defendants to "maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy" of their information. (Doc. No. 1-1 ¶ 287). Plaintiffs further allege that Defendants violated those requirements by allowing unauthorized disclosures of their information to Google. (Id. ¶¶ 291–95). Those allegations necessarily raise two of the interpretive issues that Defendants identify: "whether appointment-scheduling data and patient-portal browsing information constitute 'individually identifiable health information' or 'protected health information' under 45 C.F.R. § 160.103" and "whether use of Google Analytics constitutes an unauthorized 'disclosure' under the HIPAA Privacy Rule." (Doc. No. 15 at 18).

In their Tennessee wiretap claim, Plaintiffs allege that in "violation of 42 U.S.C. § 1320d-6"—HIPAA's criminal prohibition on certain unauthorized disclosures of individually identifiable health information—Defendants "knowingly disclosed 'individually identifiable health information to another person.'" (Doc. No. 1-1 ¶ 389). Plaintiffs invoke that alleged violation to

establish a criminal or tortious purpose under Tennessee's wiretap statute. (Id. ¶ 394). That theory necessarily raises the same issues concerning the definition of protected information, as well as "whether Defendants' conduct constitutes a 'knowing' violation subject to criminal penalties under § 1320d-6." (Doc. No. 15 at 18).

The Court finds that Plaintiffs' negligence per se claim necessarily raises disputed federal issues concerning "whether appointment-scheduling data and patient-portal browsing information constitute 'individually identifiable health information' or 'protected health information' under 45 C.F.R. § 160.103" and "whether use of Google Analytics constitutes an unauthorized 'disclosure' under the HIPAA Privacy Rule." (Doc. No. 15 at 18). Those issues also bear on Plaintiffs' Tennessee wiretap claim, which additionally raises the issue "whether Defendants' conduct constitutes a 'knowing' violation subject to criminal penalties under § 1320d-6." (Id.)

The Court recognizes that incorporating a federal statutory violation into a state-law claim does not automatically establish federal-question jurisdiction. See Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 814 (1986) (finding that a federal labeling violation incorporated into a state-law negligence claim was "insufficiently 'substantial' to confer federal-question jurisdiction" where Congress had not created a private federal cause of action); Grable, 545 U.S. at 314–18 (clarifying that, even where a state-law claim raises a federal issue, courts must assess the federal interest at stake and the implications of opening a federal forum, and concluding that a state-law quiet-title claim raising disputed federal tax-notice issues conferred federal jurisdiction). The Court also recognizes that Plaintiffs plead their negligence per se and wiretap claims as alternative sources of liability. (See Doc. No. 1-1 ¶ 286, 394(c)). The Court will consider those points in determining whether the federal issues are substantial enough to support jurisdiction.

B. Substantiality

The Court must next determine whether the disputed federal issues raised by Plaintiffs' negligence per se claim and Tennessee wiretap claim are substantial enough to confer federal-question jurisdiction. Mikulski, 501 F.3d at 570. Courts in the Sixth Circuit consider

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

Id. (citing Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 700 (2006)). "[N]o single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." Id.

The first factor—whether the case includes a federal agency whose compliance with a federal statute is in dispute—weighs against jurisdiction. Defendants are private companies.

The second factor—whether the federal issue is important—also weighs against jurisdiction. This factor presents a closer call, but the Court finds that the federal issues raised in Plaintiffs' negligence per se claim and Tennessee wiretap claim have limited importance. The facts and reasoning of Mikulski are instructive. In Mikulski, the parties disputed the meaning of a particular provision of the Internal Revenue Code. Id. at 571. The Sixth Circuit concluded that the disputed interpretation was "not particularly important to the federal government" because it concerned "only the interpretation of the effective date of an accounting provision," did not "implicate any broader or more substantial issue," and did not "necessarily even resolve all aspects" of the case. Id.

Here, the disputed federal issues bear on only two claims—pleaded as alternative sources of liability—and resolving those issues would not necessarily establish liability even on those

claims. Although the issues require interpreting federal law, their resolution is ultimately fact bound and concerns Defendants' conduct under Tennessee law. Congress, moreover, has not created a private cause of action under HIPAA. "[W]here Congress has not created a private cause of action for violations of a federal statute, there is less likely to be a substantial interest in favor of removal." Mays v. City of Flint, 871 F.3d 437, 450 (6th Cir. 2017) (citing Grable, 545 U.S. at 318); see also, e.g., C.J. by & through Brady v. Truman Med. Ctr., Inc., 2020 WL 3473651, at *3–4 (W.D. Mo. June 25, 2020) (finding federal issues insufficiently substantial to confer jurisdiction despite a negligence per se claim relying exclusively on federal statutory standards, including HIPAA).

The third factor—whether resolving the disputed federal issues would resolve the case—likewise weighs against jurisdiction. Mikulski is again instructive. In Mikulski, the Sixth Circuit explained that the disputed interpretation of the Internal Revenue Code was "dispositive if decided in favor of [the defendant], but only because the plaintiffs have conceded as much." Mikulski, 501 F.3d at 571. Thus, the court reasoned, if the plaintiffs prevailed on their interpretation and established that the defendant violated the federal provision, they would still need to "prove the remaining elements" of both of their claims. Id. Conversely, the court reasoned, if the defendant prevailed "on its construction" and showed compliance with the federal provision, the plaintiffs could not prevail on either of their claims. Id. Accordingly, the court concluded that "conformity with [the federal provision] may, but will not necessarily, conclude the action." Id.

Here, like in Mikulski, the disputed federal issues may or may not be dispositive of some of the claims that necessarily raise them, depending on how those issues are resolved. Unlike in Mikulski, however, even if resolving those issues disposed of both Plaintiffs' negligence per se and Tennessee wiretap claims, it would not resolve the case.

Consider Plaintiffs' negligence per se claim. Plaintiffs allege that HIPAA and its implementing regulations required Defendants to "maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy" of their private information. (Doc. No. 1-1 ¶ 287). That claim raises the disputed issues "whether appointment-scheduling data and patient-portal browsing information constitute 'individually identifiable health information' or 'protected health information' under 45 C.F.R. § 160.103" and "whether use of Google Analytics constitutes an unauthorized 'disclosure' under the HIPAA Privacy Rule." (Doc. No. 15 at 18). Resolving those questions in Plaintiffs' favor could establish the applicable federal duties and support a finding that Defendants breached them. But Plaintiffs would still need to establish causation and damages under Tennessee law. Conversely, resolving those questions in Defendants' favor could defeat the negligence per se claim.

Consider also Plaintiffs' Tennessee wiretap claim. Plaintiffs allege that in "violation of 42 U.S.C. § 1320d-6" Defendants "knowingly disclosed 'individually identifiable health information to another person.'" (Doc. No. 1-1 ¶ 389). That claim raises the same disputed questions concerning the information disclosed and whether its disclosure violated HIPAA, as well as whether "Defendants' conduct constitutes a 'knowing' violation subject to criminal penalties under § 1320d-6." (Doc. No. 15 at 18). Resolving those questions in Plaintiffs' favor could establish the alleged federal violation. But Plaintiffs only invoke that violation to defeat the "party exception" to Tennessee's wiretap statute. (Doc. No. 1-1 ¶ 394). Plaintiffs would still need to prove the remaining elements of their claim—i.e., an unlawful "interception"—under Tennessee law. Tenn. Code. Ann. § 39-13-601. Likewise, resolving the federal issues in Defendants' favor could, but would not necessarily, defeat the claim because Plaintiffs alternatively allege "[a] knowing breach of Defendant's common law and fiduciary duties" as a separate basis for

overcoming the exception. (Id. ¶ 394(c)). Thus, resolving the disputed federal issues in either direction would not necessarily dispose of Plaintiffs' wiretap claim.

No matter what, resolving the disputed federal issues would not resolve this case. Plaintiffs also assert claims for ordinary negligence, breach of implied contract, unjust enrichment, intrusion upon seclusion, and breach of fiduciary duty. (Id. ¶¶ 263–84, 296–375). Those claims rest on independent sources of duty under Tennessee law and require proof of Defendants' alleged conduct regardless of how the disputed federal issues are resolved. Thus, unlike in Mikulski, even a resolution of the federal questions entirely in Defendants' favor would leave substantial portions of the case unresolved. This factor weighs against jurisdiction.

The fourth factor—whether a decision on the federal issues will control numerous other cases—again weighs against jurisdiction. Defendants argue that similar healthcare-tracking-technology litigation is pending nationwide and that resolving the disputed HIPAA issues would affect those cases. (Doc. No. 15 at 19–21). True. Interpreting what constitutes protected health information under HIPAA and whether its transmission through Google Analytics constitutes an unauthorized disclosure could guide other courts confronting those same questions. But those interpretations would not necessarily control the resolution of other cases. As here, the federal issues may concern only particular claims, and resolving them may not establish liability even on those claims, much less resolve the entire litigation. Whether Defendants knowingly violated § 1320d-6, moreover, involves a fact-bound inquiry regarding Defendants' particular conduct. Thus, although resolving the disputed federal issues may be informative, Defendants have not established that it would control numerous other cases.

Finally, other considerations do not counsel in favor of jurisdiction. Defendants argue that Plaintiffs' counsel has brought similar tracking-technology cases in federal court, including Doe

v. Unlock Health, Inc., No. 3:26-cv-00289 (M.D. Tenn.). (Doc. No. 15 at 10 n.4, 19–20). Although that case, which is also before this Court, involves similar allegations, the plaintiffs there invoked jurisdiction under the Class Action Fairness Act and, alternatively, federal-question jurisdiction based on claims under the Electronic Communications Privacy Act ("ECPA"). (Doc. No. 1, No. 3:26-cv-00289). Unlike HIPAA, the ECPA provides a private cause of action for certain violations. See 18 U.S.C. § 2520. Those independent grounds for federal jurisdiction have no bearing on whether Plaintiffs' claims here raise substantial federal issues.

On balance, Defendants have not carried their burden of establishing that the disputed federal issues are sufficiently substantial to confer jurisdiction. See Gunn, 568 U.S. at 259; Mikulski, 501 F.3d at 572–73. Accordingly, this case must be remanded.

C. Attorney's Fees

Plaintiffs seek attorney's fees under 28 U.S.C. § 1447(c). (Doc. No. 13 at 14). Because Defendants had an objectively reasonable basis for seeking removal, the Court will deny that request.

## IV. Conclusion

For the reasons above, the motion to remand (Doc. No. 12) will be granted. The request for attorney's fees will be denied. This case will be remanded to the Circuit Court for Davidson County, Tennessee.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE